# United States Court of Appeals for the Federal Circuit

―――――――――――

**COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS,**
*Plaintiff-Appellee*

**FONTAINE INC., GOVERNMENT OF CANADA, MARCEL LAUZON INC., LES PRODUITS FORESTIERS D&G LTEE, NORTH AMERICAN FOREST PRODUCTS LTD., PARENT-VIOLETTE GESTION LTEE, LE GROUPE PARENT LTEE, SCIERIE ALEXANDRE LEMAY & FILS INC., GOVERNMENT OF QUEBEC, MOBILIER RUSTIQUE (BEAUCE) INC., GOVERNMENT OF THE PROVINCE OF NEW BRUNSWICK,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant*

―――――――――――

2022-1021, 2022-1068, 2022-1078

―――――――――――

Appeals from the United States Court of International Trade in Nos. 1:19-cv-00122-MAB, 1:19-cv-00164-MAB, 1:19-cv-00168-MAB, 1:19-cv-00170-MAB, Judge Mark A. Barnett.

―――――――――――

Decided:  April 25, 2023

————————————

JY CHEH SOPHIA LIN, Picard Kentz & Rowe LLP, Washington, DC, argued for plaintiff-appellee Committee Overseeing Action for Lumber International Trade Investigations or Negotiations.  Also represented by ANDREW WILLIAM KENTZ, NATHANIEL RICKARD, WHITNEY MARIE ROLIG, ZACHARY WALKER, DAVID ALBERT YOCIS.

MARK B. LEHNARDT, Law Offices of David L. Simon, PLLC, Washington, DC, argued for plaintiff-appellants Fontaine Inc., Government of Canada, Government of Québec, Government of the Providence of New Brunswick.

EDWARD LEBOW, Haynes & Boone, LLP, Washington, DC, argued for plaintiffs-appellants Marcel Lauzon Inc., Les Produits Forestiers D&G Ltée, Le Groupe Parent Ltée, Mobilier Rustique (Beauce) Inc., North American Forest Products Ltd., Parent-Violette Gestion Ltée, Scierie Alexandre Lemay & Fils, Inc.  Marcel Lauzon Inc., Les Produits Forestiers D&G Ltée, also represented by ANGELA M. OLIVER.

JOANNE OSENDARP, McDermott Will & Emery, LLP, Washington, DC for plaintiff-appellant Government of Canada.  Also represented by CONOR GILLIGAN, LYNN KAMARCK, ALAN KASHDAN.

RICHARD WEINER, Sidley Austin LLP, Washington, DC, for plaintiffs-appellants North American Forest Products Ltd., Parent-Violette Gestion Ltée, Le Groupe Parent Ltée.  Also represented by RAJIB PAL.

YOHAI BAISBURD, Cassidy Levy Kent (USA) LLP, Washington, DC, for plaintiff-appellant Scierie Alexandre Lemay & Fils Inc.  Also represented by JAMES EDWARD RANSDELL, IV, JONATHAN M. ZIELINSKI.

NANCY NOONAN, ArentFox Schiff LLP, Washington, DC, for plaintiff-appellant Government of Québec. Also represented by MATTHEW CLARK, LEAH N. SCARPELLI.

JOHN ROBERT MAGNUS, TradeWins LLC, Washington, DC, for plaintiff-appellant Mobilier Rustique (Beauce) Inc.

STEPHAN E. BECKER, Pillsbury Winthrop Shaw Pittman LLP, Washington, DC, for plaintiff-appellant Government of the Province of New Brunswick. Also represented by AARON RIAVE HUTMAN, MOUSHAMI PRABHAKAR JOSHI.

ELIZABETH ANNE SPECK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-amicus curiae United States. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY; NIKKI KALBING, Office of the Chief Counsel for Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

———————————

Before DYK, REYNA, and TARANTO, *Circuit Judges*.

TARANTO, *Circuit Judge*.

The United States Department of Commerce initiated a countervailing duty investigation concerning imports of certain softwood lumber products from Canada. Certain Softwood Lumber Products from Canada: Initiation of Countervailing Duty Investigation, 81 Fed. Reg. 93,897 (Dec. 22, 2016). Commerce individually investigated five groups of companies (each group consisting of affiliated companies) that were producers and/or exporters of the covered products, and it ultimately issued a final determination to impose countervailing duties on the products of those companies at company-specific rates ranging from 3.34% to 18.19%. Certain Softwood Lumber Products from Canada:     Final     Affirmative     Countervailing     Duty

Determination, and Final Negative Determination of Critical Circumstances, 82 Fed. Reg. 51,814, 51,815–16 (Nov. 8, 2017).  Commerce also determined to impose countervailing duties on products of all other producers and exporters of the products at an "all-others" rate that initially was 14.25%, *id.* at 51,816, and then was modified to be 14.19%, Certain Softwood Lumber Products from Canada: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order, 83 Fed. Reg. 347, 349 (Jan. 3, 2018).

Starting within a few days of publication of the countervailing duty (CVD) order on January 3, 2018, and continuing until February 5, 2018, almost three dozen Canadian companies that alleged they were subject to the all-others rate asked Commerce to  initiate an "expedited review" under 19 C.F.R. § 351.214(k) (now § 351.214(*l*)) to give them individually determined rates, and Commerce initiated that review.  Certain Softwood Lumber Products from Canada: Initiation of Expedited Review of the Countervailing Duty Order, 83 Fed. Reg. 9,833 (Mar. 8, 2018).  Most of the requesters dropped out of the proceeding before Commerce ruled.  Ultimately, as relevant here, Commerce awarded the individual requesters now before us (exporters of the covered products) reduced or de minimis CVD rates.  Certain Softwood Lumber Products from Canada: Final Results of Countervailing Duty Expedited Review, 84 Fed. Reg. 32,121 (July 5, 2019).

A domestic trade group—the Committee Overseeing Action for Lumber International Trade Investigations or Negotiations (COALITION)—challenged the final results of the expedited review in the Court of International Trade (Trade Court).  In particular, COALITION asked the Trade Court to set aside the results on the ground that Commerce lacked statutory authority to create the expedited-review process.  The Canadian exporters now before us and the governments of Canada, Québec, and New Brunswick—collectively,    the    Canadian    parties—intervened    in

COALITION's action, and some of those parties also filed their own actions in the Trade Court, raising some issues not relevant to this appeal. The Trade Court consolidated the cases, with the (first-filed) COALITION action as the lead case.

The Canadian parties and the United States argued that Commerce had authority to adopt the expedited-review procedures of 19 C.F.R. § 351.214(k) to give exporters a chance to secure individual rates shortly after publication of a CVD order, arguing for the existence of such authority chiefly in various provisions of the Uruguay Round Agreements Act (URAA), Pub. L. No. 103-465, 108 Stat. 4809 (1994). The Trade Court rejected those contentions and held that the Secretary of Commerce lacked statutory authority to adopt the procedures. We hold otherwise, concluding that the Secretary had statutory authority to adopt the expedited-review process as procedures for implementing statutory provisions that authorize individualized determinations in CVD proceedings. *See* 19 U.S.C. §§ 1667f-1(e), 1677m, 3513(a)(2). We therefore reverse the judgment of the Trade Court and remand for any proceedings necessitated by our holding that statutory authorization exists.

## I

## A

Pursuant to 19 U.S.C. §§ 2901–2906, the President negotiated eighteen international trade agreements referred to as the Uruguay Round Agreements. At least as relevant here, it is undisputed that those agreements are not "self-executing," *see Medellin v. Texas*, 552 U.S. 491, 516, 525–27 (2008) (discussing notion of non-self-executing treaties)—that is, they "have no legal effect in the United States except insofar as they have been implemented into United States law," U.S. Amicus Br. at 3–4 (citing 19 U.S.C. § 2903(a)(1)). *See* COALITION's Br. at 19 ("It is well-established that [the Uruguay Round Agreements]

are not self-executing." (citing 19 U.S.C. § 3512(a))); Cana-
dian Parties' Reply Br. at 5–6 (noting COALITION's posi-
tion that the Uruguay Round Agreements "are not self-
executing" and stating: "No one has argued to the con-
trary."). The President, following the fast-track legislative
procedure of 19 U.S.C. §§ 2903 and 2191–2193, submitted
legislation to Congress—along with a statement of admin-
istrative action proposed to implement the agreements,
H.R. Doc. No. 103-316, vol. 1 (1994), *reprinted in* 1994
U.S.C.C.A.N. 4040 (SAA)—that would approve the agree-
ments and create enforceable domestic law implementing
them to the extent specified in the legislation. The legisla-
tion enacted by Congress at the President's request was the
URAA.

Section 101 of the URAA declares that Congress "ap-
proves" both the Uruguay Round Agreements and "the
statement of administrative action proposed to implement
the agreements that was submitted to the Congress." 19
U.S.C. § 3511(a)(1)–(2) (codification of URAA § 101(a)(1)–
(2)). Section 102(a) of the URAA then describes the distinc-
tion and relationship between the Uruguay Round Agree-
ments and domestic law, providing that "[n]o provision of
any of the Uruguay Round Agreements, nor the application
of any such provision to any person or circumstance, that
is inconsistent with any law of the United States shall have
effect" and, in addition, that "[n]othing in this Act shall be
construed . . . to amend or modify any law of the United
States . . . unless specifically provided for in this Act." *Id.*
§ 3512(a)(1)–(2) (codification of § 102(a)(1)–(2)). Section
102(d) of the URAA defines the role of the SAA, stating that
it "shall be regarded as an authoritative expression by the
United States concerning the interpretation and applica-
tion of the Uruguay Round Agreements and this Act in any
judicial proceeding in which a question arises concerning
such interpretation or application." *Id.* § 3512(d) (codifica-
tion of § 102(d)).

Section 103 of the URAA addresses the regulatory implementation of the URAA.  Subsection (a) provides that "appropriate officers of the United States Government may issue such regulations . . . as may be necessary to ensure that any provision of this Act, or amendment made by this Act . . . is appropriately implemented."  *Id.* § 3513(a)(2) (codification of § 103(a)(2)).  Subsection (b) provides that "[a]ny interim regulation necessary or appropriate to carry out any action proposed in the statement of administrative action . . . to implement" any of three specified Uruguay Round Agreements "shall be issued" by a certain time.  *Id.* § 3513(b) (codification of § 103(b)).

One of the three just-mentioned URAA-approved Uruguay Round Agreements was the Agreement on Subsidies and Countervailing Measures (SCM Agreement).  *Id.* § 3511(d)(12).  The URAA amended a number of provisions of our domestic law to implement the SCM Agreement, including provisions of 19 U.S.C. §§ 1677f-1 and 1677m that concern, among other things, individual-company treatment in CVD proceedings.  The added or amended provisions of those two sections are especially important for present purposes.

First: In § 269 of the URAA—which amended § 777A of the Tariff Act of 1930 (codified at 19 U.S.C. § 1677f-1) by adding subsection (e)—Congress required that Commerce "determine an individual countervailable subsidy rate for each known exporter or producer of the subject merchandise," 19 U.S.C. § 1677f-1(e)(1), unless Commerce "determines that it is not practicable" to do so "because of the large number of exporters or producers involved in the investigation or review, *id.* § 1677f-1(e)(2).[1]  Congress then

_____

[1]     The United States in this court and our precedent identify certain pre-URAA regulations that permitted Commerce to exclude individual companies from country-wide rates.  *See*, *e.g.*, 19 C.F.R. § 355.38 (1981) (permitting

identified several options (without declaring them exclusive) for what Commerce "may" do if it makes the "not practicable" determination: It may "determine individual countervailable subsidy rates for a reasonable number of exporters or producers," *id.* § 1677f-1(e)(2)(A), by examining "a sample of exporters or producers that [Commerce] determines is statistically valid based on the information available," *id.* § 1677f-1(e)(2)(A)(i), or by examining "exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that [Commerce] determines can be reasonably examined," *id.* § 1677f-1(e)(2)(A)(ii), and apply a blanket "all-others" rate to those who were not individually examined, *id.* § 1671d(c)(1)(B), (c)(5)(A); and it may "determine a single country-wide subsidy rate to be applied to all exporters and producers," *id.* §§ 1677f-1(e)(2)(B), 1671d(c)(5)(B).

Second: In § 231 of the URAA—which added § 782 to the Tariff Act of 1930, codified at 19 U.S.C. § 1677m—Congress further addressed individual investigations.  Under the new provision, in investigations or administrative reviews in which Commerce has "limited the number of exporters or producers examined, or determined a single country-wide rate," Commerce "shall establish an individual countervailable subsidy rate . . . for any exporter or producer not initially selected for individual examination" that submits certain information—as long as specified conditions are met, including that determining such individual rates will not be unduly burdensome and will not inhibit

---

Commerce to exclude "[a]ny firm which does not benefit from a subsidy alleged" from a CVD order); *MacLean-Fogg Co. v. United States*, 753 F.3d 1237, 1245 (Fed. Cir. 2014) (describing history of countervailing duty statute and "all-others" rate and discussing, *e.g.*, 19 C.F.R. §§ 355.14 and 355.20 (1993)).

timely completion of Commerce's task. *Id.* § 1677m(a)(1)–(2).[2]

One provision, not of the URAA, but of the SCM Agreement itself, has featured in the present dispute. Like the above URAA provisions, it addresses individualized determinations in countervailing duty proceedings. Article 19.3 of the SCM Agreement provides, in pertinent part:

> Any exporter whose exports are subject to a definitive countervailing duty but who was not actually investigated for reasons other than a refusal to cooperate, shall be entitled to an expedited review in order that the investigating authorities promptly establish an individual countervailing duty rate for that exporter.

Marrakesh Agreement Establishing the World Trade Organization, Apr. 15, 1994, 1869 U.N.T.S. 14, Annex 1A, SCM Agreement, art. 19.3. The SAA describes Article 19.3 as providing that "any exporter" that "was not actually investigated for reasons other than a refusal to cooperate" and is subject to a CVD order "shall be entitled to an expedited review to establish an individual CVD rate for that exporter." SAA at 941, 1994 U.S.C.C.A.N. at 4250.

## B

The URAA was enacted on December 8, 1994. 108 Stat. at 4809. On September 12, 1995, the President issued a

---

[2] The requirements of § 1677m(a) quoted in text were part of the 1994 enactment, and they remain so, though the provision has been amended since then in ways not significant to the present appeal. For relevant comments on §§ 231 and 269 of the URAA, see SAA at 872–73, 1994 U.S.C.C.A.N. at 4200–01; H.R. Rep. No. 103-826, pt. 1, at 102–03, 118–20 (1994); S. Rep. No. 103-412 at 83–84, 100 (1994).

proclamation declaring that "the Uruguay Round Agreements . . . entered into force for the United States on January 1, 1995." Proclamation No. 6821, 60 Fed. Reg. 47,663, 47,663 (Sept. 12, 1995), *reprinted in* 109 Stat. 1813 (1995); *see* 19 U.S.C. § 3511(b) (giving the President authority to determine the date on which the agreements enter into force).

Months before the entry-into-force date, Commerce, on May 11, 1995, had issued interim regulations, none of which addressed expedited CVD reviews. *See* Antidumping and Countervailing Duties, 60 Fed. Reg. 25,130, 25,130–33 (May 11, 1995). On February 27, 1996, Commerce issued a notice of proposed rulemaking, building on the interim regulations. Antidumping Duties; Countervailing Duties, 61 Fed. Reg. 7,308, 7,317–19 (Feb. 27, 1996). "To implement Article 19.3 of the SCM Agreement," Commerce proposed adding 19 C.F.R. § 351.214(k) to "expand[] the new shipper review procedure to cover exporters that were not individually examined in a countervailing duty investigation where the Secretary limited the investigation under . . . the [URAA]." *Id.* at 7,318.

On May 19, 1997, Commerce published the final regulations for implementing the URAA, which included 19 C.F.R. § 351.214(k).[3] Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296, 27,321–22, 27,396 (May 19, 1997). Section 351.214(k) contains, *inter alia*, "rules regarding requests for expedited reviews by noninvestigated exporters in certain countervailing duty proceedings and

---

[3]     On September 20, 2021, § 351.214(k) was redesignated as § 315.214(*l*), with no change that is material here. Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws, 86 Fed. Reg. 52,300, 52,373 (Sept. 20, 2021). For consistency with the briefs and prior proceedings in this case, we generally refer to the regulation as § 351.214(k).

procedures for conducting such reviews." *Id.* at 27,394. Specifically, § 351.214(k) describes a procedure for "[e]xpedited reviews in countervailing duty proceedings for noninvestigated exporters": If Commerce "limited the number of exporters or producers to be individually examined" in a CVD investigation, then, within thirty days of the countervailing duty order's publication in the Federal Register, "an exporter that the Secretary did not select for individual examination or that the Secretary did not accept as a voluntary respondent may request" an expedited review of the CVD order so that Commerce may establish an individual CVD rate for the requesting company. 19 C.F.R. § 351.214(k)(1) (now § 351.214(*l*)(1)). If Commerce determines that the company's individual rate is de minimis, then Commerce may exclude that company from the CVD order. *Id.* § 351.214(k)(3)(iv) (now § 351.214(*l*)(3)(iii)).

C

As indicated above, Commerce conducted a CVD investigation, starting in late 2016, that led to a final determination in late 2017 calculating individual rates for five investigated companies and an all-others rate of 14.25%. Certain Softwood Lumber Products from Canada: Final Affirmative Countervailing Duty Determination, and Final Negative Determination of Critical Circumstances, 82 Fed. Reg. at 51,815–16. Commerce amended the all-others rate to 14.19% for non-investigated companies on January 3, 2018. Certain Softwood Lumber Products from Canada: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order, 83 Fed. Reg. at 348. Starting a few days after January 3, 2018, Commerce received numerous requests from Canadian exporters of the covered products asking Commerce to initiate an expedited review to provide the requesters individualized rate determinations, and Commerce initiated the review on March 8, 2018. Certain Softwood Lumber Products from Canada: Initiation of Expedited Review of the Countervailing Duty Order, 83 Fed. Reg. at 9,833. On July 5, 2019, Commerce

issued the final results of its expedited review, calculating
greatly reduced or de minimis rates for each of the newly
investigated Canadian companies that remained in the
proceeding by the time of decision.  Certain Softwood Lum-
ber Products from Canada: Final Results of Countervailing
Duty Expedited Review, 84 Fed. Reg. at 32,122.  In the sup-
porting issues-and-decision memorandum, dated June 28,
2019, Commerce concluded that it had authority to prom-
ulgate 19 C.F.R. § 351.214(k) under URAA § 103(a), which
it interpreted as authorizing promulgation of regulations
to implement obligations under the SCM Agreement, in-
cluding Article 19.3, even without a specific URAA provi-
sion addressed to the particular subject.  J.A. 1121–24.

    On July 15, 2019, COALITION filed an action in the
Trade Court challenging the final results on the ground
that Commerce lacked statutory authority to conduct expe-
dited reviews under 19 C.F.R. § 351.214(k).  As noted
above, several Canadian exporters, plus the Canadian gov-
ernmental entities (Canada, Québec, and New Brunswick),
then either intervened in COALITION's action or filed
their own actions challenging the final results on grounds
irrelevant to this appeal or did both.  The Trade Court con-
solidated all of the actions.  And after denying a prelimi-
nary injunction sought by COALITION, *Committee
Overseeing Action for Lumber International Trade Investi-
gations or Negotiations v. United States*, 393 F. Supp. 3d
1271 (Ct. Int'l Trade 2019) (*Coalition I*), the Trade Court
considered the government's motion to dismiss for lack of
jurisdiction and concluded that it had jurisdiction under
the residual jurisdictional grant made in 28 U.S.C.
§ 1581(i)(4).  *Committee Overseeing Action for Lumber In-
ternational Trade Investigations or Negotiations v. United
States*, 413 F. Supp. 3d 1334, 1341, 1343–47 (Ct. Int'l Trade
2019) (*Coalition II*).

    On December 19, 2019, COALITION filed a motion for
judgment on the administrative record under Trade Court
Rule 56.2, arguing that Commerce lacked authority to

promulgate § 351.214(k) under the URAA. Commerce, as well as the Canadian governmental entities and the Canadian exporters, opposed the motion. The Trade Court agreed with COALITION's argument that "Commerce exceeded its authority to the extent that it promulgated 19 C.F.R. § 351.214(k) pursuant to URAA § 103(a)." *Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, 483 F. Supp. 3d 1253, 1263–64 (Ct. Int'l Trade 2020) (*Coalition III*). The Trade Court also concluded that URAA § 103(b)—which authorizes Commerce to issue interim regulations necessary to "to carry out any action proposed in" the SAA, 19 U.S.C. § 3513(b)—did not authorize the regulation because there was no "action proposed" in the SAA to implement expedited CVD reviews. *Coalition III*, 483 F. Supp. 3d at 1267. The Trade Court decided, however, that it should remand the matter for Commerce to consider whether several particular statutory bases supported the regulation. *Id.* at 1271–73. One such basis, invoked by Canada and Québec, was 19 U.S.C. § 1677f-1, as implemented by Commerce under URAA § 103(a), 19 U.S.C. § 3513(a). *See Coalition III*, 483 F. Supp. 3d at 1272; *see* Joint Brief of Defendant-Intervenors Government of Canada and Government of Québec in Opposition to Plaintiff's Motion for Judgment on the Agency Record at 15–18, 22–29, *Coalition III*, 483 F. Supp. 3d 1253 (No. 19-00122), ECF No. 120.

On remand, Commerce considered the identified sources of potential statutory authority, including 19 U.S.C. § 1677f-1(e), but it concluded without meaningful analysis that this provision (and others) did not provide authority to promulgate 19 C.F.R. § 351.214(k). J.A. 565–67. Returning to the Trade Court, the United States, the Canadian parties, and COALITION filed comments on Commerce's remand decision. The Trade Court accepted Commerce's determinations concerning the lack of statutory authority to promulgate 19 C.F.R. § 351.214(k) outside URAA § 103(a), but in doing so, it stated that the Canadian

governmental parties had not renewed their reliance on 19 U.S.C. § 1677f-1, and so the Trade Court did not substantively address that possible basis for the regulation. *Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States*, 535 F. Supp. 3d 1336, 1348–52 & n.15 (Ct. Int'l Trade 2021) (*Coalition IV*). The Canadian entities in fact argued that Commerce had only perfunctorily and insufficiently addressed that issue and others, and because Commerce had "not engag[ed] meaningfully with each of the alternative bases," they referred the Trade Court to the earlier submissions on § 1677f-1 and other issues. Comments on Remand Results on Behalf of Consolidated Defendant-Intervenors at 1–2, *Coalition IV*, 535 F. Supp. 3d 1336 (No. 19-00122), ECF No. 183.

Because the Trade Court already had found statutory authority otherwise missing, it held 19 C.F.R. § 351.214(k) unauthorized by law, and it vacated the regulation as well as the final results of expedited review at issue (the vacatur applying only prospectively). *Coalition IV*, 535 F. Supp. 3d at 1355–63. It entered judgment on August 18, 2021.

The Canadian parties timely appealed within the permitted sixty days of the Trade Court's final judgment. Fed. R. App. P. 4(a)(1)(B). The United States did not file a notice of appeal. On January 19, 2022, it filed a letter indicating that it would not be participating in the appeal, and it filed no brief in the briefing leading up to oral argument. We have jurisdiction under 28 U.S.C. § 1295(a)(5).[4]

---

[4]   We see no reversible error in the Trade Court's conclusion that it had jurisdiction under 28 U.S.C. § 1581(i)(4). *See Coalition II*, 413 F. Supp. 3d at 1343–47. For an action within § 1581(i)(4), the standard of review is "provided in [5 U.S.C. § 706]." 28 U.S.C. § 2640(e); *see Coalition III*, 483 F. Supp. 3d at 1262.

## II

We have before us and we answer only the question of whether there is statutory authority for § 351.214(k) (now § 314.214(*l*)). *See* 5 U.S.C. § 706(2)(C). That question presents an issue of law, decided de novo, requiring no exercise of discretion that belongs to the agency under *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 88 (1943), and *Securities and Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947). The challenge to statutory authority is made to § 351.214(k) as a whole, with no components of that regulation singled out for separate challenge.

After hearing oral argument, we solicited the views of the United States as amicus. On February 7, 2023, the government filed its amicus brief, arguing that § 351.214(k) "implements the URAA's provisions establishing general procedures for imposing countervailing duties," specifically relying (as the Canadian parties had in the Trade Court) on the individualized-determination provisions of 19 U.S.C. § 1677f-1(e), which was added to Title 19 by the URAA and therefore comes within the regulatory-implementation authority stated in URAA § 103(a), 19 U.S.C. § 3513(a). U.S. Amicus Br. at 4–6, 17–18. COALITION, the appellee here, does not object to our consideration of this argued ground of decision on its merits.

We agree that statutory authority for the expedited-review process is properly found in the URAA's enactment of § 1677f-1(e) to favor individual-company determinations and the URAA's grant of regulatory-implementation power to Commerce in § 3513(a). Section 1677f-1(e) declares a "[g]eneral rule" that Commerce "shall determine an individual countervailable subsidy rate for each known exporter or producer of the subject merchandise." 19 U.S.C. § 1677f-1(e)(1). It then allows Commerce to depart from that rule if the large number of exporters or producers makes applying the rule "not practicable," and it states

that, in such a circumstance, Commerce "may . . . (A) determine individual countervailable subsidy rates for a reasonable number of exporters or producers" (by use of statistically valid sampling or identifying the largest volume that can reasonably be examined) or "(B) determine a single country-wide subsidy rate" for all exporters and producers. *Id.* § 1677f-1(e)(2). Commerce's regulation, 19 C.F.R. § 351.214(k), provides one procedure for giving effect to the primary policy of providing individual-company rate determinations.

This procedure fits within the URAA's grant of power to Commerce to adopt "such regulations as may be necessary to ensure that any provision of [the URAA], or amendment made by [the URAA], that takes effect on the date any of the Uruguay Round Agreements enters into force with respect to the United States is appropriately implemented on such date." URAA § 103(a), 19 U.S.C. § 3513(a)(2). The SAA itself makes the connection between the expedited-review process at issue and § 1677f-1(e) as added by the amendment to § 777A of the Tariff Act made by the URAA. Under a heading, "Company-Specific Subsidy Rates and Expedited Reviews," the SAA states: "Article 19.3 of the Subsidies Agreement provides that any exporter whose exports are subject to a CVD order, but which was not actually investigated for reasons other than a refusal to cooperate, shall be entitled to an expedited review to establish an individual CVD rate for that exporter." SAA at 941, 1994 U.S.C.C.A.N. at 4250. It immediately adds: "Several changes must be made to the [Tariff] Act to implement the requirements of Article 19.3." SAA at 941, 1994 U.S.C.C.A.N. at 4251. Two brief subsections follow that give specifics, the first of which, "Individual Countervailing Duty Rates," explains that the URAA "eliminates the presumption in favor of a single country-wide CVD rate and amends section 777A of the Act to establish a general rule in favor of individual CVD rates for each exporter or producer individually investigated." *Id.* In that way, the

SAA links expedited reviews to § 1677f-1(e).[5]  And Commerce, in proposing § 351.214(k), likewise linked Article 19.3 to § 1677f-1(e).  *See* Antidumping Duties; Countervailing Duties, 61 Fed. Reg. at 7,318–19.

It is also evident as a logical matter why an expedited-review process "may be necessary to ensure that" the individualized-determination preference of § 1677f-1(e) is "appropriately implemented."  19 U.S.C. § 3513(a)(2).  The regulation provides an immediate post-CVD-order process for exporters to use to secure individual determinations, with the just-announced all-others rate giving exporters a concrete basis for deciding whether the costs of seeking their own rates are worth incurring.  Some exporters may postpone a decision whether to request an individual rate until after the CVD order and then decide not to make such a request.  The availability of this process thus may reduce the number of exporters requesting individual determinations from what that number would be if all requests for such determinations had to be made before issuance of the CVD order.  The net result may enhance the efficiency of the agency process as a whole, including by making it more practicable for Commerce (with fewer requesters) to make individual determinations in the proceeding before publishing the CVD order.

COALITION makes only one argument against this basis of statutory authority.  It argues that § 1677f-1(e) limits Commerce's examination options to just three possibilities: examine all known exporters or producers, 19 U.S.C. § 1677f-1(e)(1); examine a "statistically valid" sample of exporters or producers, *id.* § 1677f-1(e)(2)(A)(i); or examine "exporters and producers accounting for the largest volume of the subject merchandise" that "can be reasonably

---

[5]    The SAA mistakenly attributes the § 777A amendment to URAA § 265; that amendment was made in URAA § 269.  *See Coalition III*, 483 F. Supp. 3d at 1258 n.4.

examined," *id.* § 1677f-1(e)(2)(A)(ii).          According to COALITION, the three options are the only permissible ones, and that exclusivity precludes Commerce from individually investigating companies based on their asking for individual determinations. COALITION's Supp. Br. at 13–14.

We reject that argument. Section 1677f-1(e), in introducing options for Commerce if making individual determinations for all producers and exporters is not practicable, uses the word "may." 19 U.S.C. § 1677f-1(e)(2). The permissive "may" by itself does not exclude other options, and nothing else makes the list that follows one that defines all permissible options. Moreover, COALITION's particular contention that § 1677f-1(e) does not give Commerce the option of providing individual determinations based on requests from exporters or producers is not just unsupported but, in fact, runs counter to § 1677m—which sometimes *requires* such action by Commerce. That provision, added by the URAA, declares that, subject to certain conditions, Commerce "shall establish an individual countervailable subsidy rate . . . for any exporter or producer not initially selected for individual examination . . . who submits to [Commerce] the information requested from exporters or producers selected for examination . . . by the date specified" for those selected exporters and producers. *Id.* § 1677m(a)(1). The SAA explained: "Section 231 of [the bill that became URAA] adds section 782(a) to the [Tariff] Act [*i.e.*, § 1677m(a)] which provides that, in cases where Commerce has limited its examination to selected exporters and producers, it nevertheless will calculate an individual dumping margin for any exporter or producer not selected for examination that provides the necessary information on a timely basis . . . ." SAA at 873, 1994 U.S.C.C.A.N. at 4201. COALITION's interpretation of § 1677f-1(e) does not fit the simultaneously enacted § 1677m(a).

Of course, the expedited reviews under § 351.214(k) do not occur during a CVD investigation, but only *after*

publication of a CVD order—with requests due within 30 days.  But the Trade Court nowhere explained why this timing distinction precludes reliance on § 1677f-1(e) as authority for the expedited-review regulation.  And in this court COALITION has not argued that the timing distinction precludes such reliance.

### III

For the foregoing reasons, we reverse the Trade Court's decision and hold that Commerce had statutory authority to adopt the expedited review procedures.  We remand for such further proceedings as required in the consolidated cases as a result of this holding.

The parties shall bear their own costs.

**REVERSED AND REMANDED**